**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

Case No.:

TIFFANY SMITH,

    **Plaintiff,**　　　　　　　　　　　　　　**JURY TRIAL DEMANDED**

v.

SUNSET TRAILS HOMEOWNERS
ASSOCIATION, INC.,

    **Defendant.**
_____/

**COMPLAINT**

Plaintiff Tiffany Smith ("Plaintiff"), by and through undersigned counsel, sues Defendant Sunset Trails Homeowners Association, Inc. ("Defendant") and alleges as follows upon personal knowledge as to Plaintiff and Plaintiff's own acts and experiences, and, as to all other matters, upon information and belief, including investigation conducted by Plaintiff's attorneys.

**JURISDICTION AND VENUE**

1. Plaintiff brings this action against Defendant, in part, for violating 42 U.S.C. § 3601 *et seq.*, the Fair Housing Act. As such, jurisdiction of this Court exists for the Fair Housing Act claim under 28 U.S.C §1331.

2. Plaintiff brings this action against Defendants, in part, for violating BROWARD COUNTY, CODE ch. 16½-35. Defendants' conduct underlying this violation also forms the basis of Defendants' Fair Housing Act violation. As such, supplemental jurisdiction exists for this violation under 28 U.S.C. §1367.

3. This Court has personal jurisdiction over Defendant and venue is proper in this District because the subject property is located in Broward County, Florida, Defendant transacts business in

1

Broward County, Florida, and the complained conduct of Defendant occurred in Broward County, Florida.

## PARTIES

4. Plaintiff is a natural person and a citizen and resident of Broward County, Florida.

5. Defendant is a Florida corporation with its principal place of business located in Miami, Florida.

## DEMAND FOR JURY TRIAL

6. Plaintiff, respectfully, demands a trial by jury on all counts and issues so triable.

## FACTS

7. The federal Housing Choice Voucher program is the federal government's major program for assisting very low-income families, the elderly, and individuals with disabilities in affording decent, safe, and sanitary housing in the private rental market.

8. Congress established the Housing Choice Voucher program (formerly known as the Section 8 Existing Housing Program) as part of the Housing and Community Development Act of 1974, Pub. L. No. 93-383, Title II, § 201(a), 88 Stat. 633, 662-66, now codified at 42 U.S.C. § 1437f, and Housing Community Development Act of 1987, Pub. L. No. 100-242, § 143, 101 Stat. 1814, 1850 (1988), codified as amended at 42 U.S.C. § 1437f(o); see also 24 C.F.R. §§ 982.1 et seq.

9. The United States Department of Housing and Urban Development ("HUD") provides Housing Choice Voucher program funding to local public housing authorities ("PHAs"), which administer the Housing Choice Voucher program locally and issue vouchers to qualified individuals and families.

10. Participants in the Housing Choice Voucher program use vouchers to find their own housing in the private rental market, including single-family homes, townhouses, and apartments.

Participants are free to choose any housing that meets the program's requirements and are not limited to units located in subsidized housing projects. A housing subsidy is paid to the landlord directly by the PHA on behalf of the participant. The participant then pays the difference between the actual rent charged by the landlord and the amount subsidized by the program.

11. Florida has a current estimated population of 21,781,128 people. The population is approximately 15.1 percent African American or Black (not Hispanic) and 57.7 percent White (not Hispanic). There are an estimated 7,775,190 households in Florida, which are an estimated 15.8 percent African American or Black (not Hispanic) and 79.0 percent White (not Hispanic).

12. An estimated 198,481 households in Florida currently participate in the Housing Choice Voucher program.

13. In Florida, African-American households are overrepresented in the households participating in the Housing Choice Voucher program. Whereas African-American/Black households comprise 15.8 percent of all households in Florida, they make up 52.0 percent of Housing Choice Voucher program participants. In contrast, only 26 percent of participating households are White (not Hispanic), although white households comprise 79.0 percent of all households in Florida.

14. Florida residents who participate in the Housing Choice Voucher program are largely concentrated in predominantly African-American neighborhoods.

15. Plaintiff is a Housing Choice Voucher holder.

16. On or about March 22, 2024, Plaintiff contacted realtor Linda Murdock ("Murdock") for assistance in locating a property to rent.

17. On or about March 28, 2024, Plaintiff, through Murdock, sought to obtain rental of property located at 11969 NW 46th St, Coral Springs, FL 33076 (the "Property") from its owner.

18. The Property is located within the Sunset Trails housing community of Coral Springs,

Florida (the "Community"). Defendant is the homeowners' association of the Community.

19. As a part of the rental process, Plaintiff was required to be approved by Defendant.

20. Plaintiff submitted an application to Defendant for Plaintiff's prospective rental of the Property.

21. Plaintiff incurred an application fee of approximately $310.00 to Defendant, which was timely paid to Defendant.

22. Defendant required and Plaintiff did submit various information in support of their application, including, but not limited to, their social security number, a photocopy of their state-issued identification card or driver's license, information regarding how many vehicles Plaintiff intended to keep at the Property, photographs of the vehicles Plaintiff intended to keep at the Property, registration for all vehicles Plaintiff intended to keep at the property, proof of insurance for all vehicles Plaintiff intended to keep at the Property, reference letters, information regarding Plaintiff's children, pay stubs, information on employers, information on past landlords, and Plaintiff's credit report(s) (for which Plaintiff incurred an expense of approximately $30.00 to obtain).

23. On or about May 3, 2024, Defendant received Plaintiff's application, which disclosed that Plaintiff was a Housing Choice Voucher holder.

24. On or about May 18, 2024, Murdock traveled to the home of Eduardo Lacroix ("Lacroix") to inquire as to the status of Plaintiff's application. Lacroix is a board member of Defendant and resides within the Community.

25. Upon Murdock's arrival, Lacroix came to the door and greeted Murdock. Murdock asked about the status of Plaintiff's application. Lacroix immediately remarked that Plaintiff was a Housing Choice Voucher holder. Lacroix further stated that the Community has had a Housing Choice Voucher holder as a resident before. However, Lacroix negatively stated that the previous Housing

Choice Voucher resident played loud, explicit music at the Community's pool. Lacroix also negatively remarked that that the previous Housing Choice Voucher resident brought their dog to the pool.

26. Lacroix *explicitly* told Murdock that he did not want Housing Choice Voucher holders in the Community. Further, Lacroix *explicitly* stated that if Murdock could find another potential tenant who was not a Housing Choice Voucher holder, he would have them approved by Defendant within three days.

27. On or about May 30, 2024, Defendant issued Plaintiff a denial letter (the "Denial Letter"), explicitly denying Plaintiff from renting the Property. The Denial Letter stated, "if applicable, reason for disapproval:", and subsequently listed five categories—"Criminal activity," "Moral Turpitude," "Credit Report," "Income - debt to credit ratio," and "Other"—with checkboxes placed to the immediate left of each category. Defendant checked the box labeled "Other" and wrote "Discrepancy between address listed on application and credit report. Conflicting information, missing previous Landlord info."

28. Given the statements of Lacroix, Plaintiff's status as a Housing Choice Voucher holder was the actual reason for disapproval of Plaintiff's application. As such, the reasons Defendant provided in the Denial Letter were mere pretexts for disapproval of Plaintiff's application.

29. Defendant's refusal to accept Housing Choice Vouchers is the equivalent of, and has the same effect as, refusing to rent to African Americans. Defendant's discriminatory policies also harm the neighborhoods in which African-American/Black residents are statistically more likely to live, and impermissibly "red line" those neighborhoods by refusing to accept Housing Choice Vouchers.

30. Plaintiff has been injured by Defendant's discriminatory conduct and has suffered damages as a result. Plaintiff's injuries include, but are not limited to, total deprivation of the $310.00 application fee Plaintiff paid to Defendant, total deprivation of the approximately $30.00 Plaintiff paid

5

to obtain her credit report(s), added monthly expenses to rent temporary housing accommodations while Plaintiff seeks permanent housing accommodations, and severe stress and emotional distress for which Plaintiff has had to visit the hospital twice due to physical symptoms, such as stomach discomfort and migraine headaches.

## COUNT I
## VIOLATION OF THE FAIR HOUSING ACT
(DISPARATE IMPACT)

31. Plaintiff re-alleges and incorporates the allegations set forth in paragraphs 1-30 as if fully set forth herein.

32. Plaintiff is a natural person of the Black/African-American race.

33. As set forth above, Defendant's refusal to accept Housing Choice Vouchers is the equivalent of, and has the same effect as, refusing to rent to African Americans.

34. As a result, Defendant's practice and/or policy to refuse to accept Housing Choice Vouchers results in a significantly disproportionate impact on the basis of race (for African-American/Black individuals and households).

35. Defendant's policy and/or practice of refusing to accept Housing Choice Vouchers, if facially neutral, has had and continues to have a discriminatory effect on African-American/Black individuals and households in Florida because these protected groups (*i.e.*, African-American/Black individuals) are disproportionately more likely to participate in the Housing Choice Voucher program as compared to the relevant non-protected groups, whereby refusing to accept Housing Choice Vouchers makes rental housing unavailable to these protected groups in violation of the Fair Housing Act, 42 U.S.C. § 3604(a). Defendant's refusal to accept Housing Choice Vouchers predictably and disproportionately harms these groups.

36. Defendant's policy and/or practice of refusing to accept Housing Choice Vouchers also predictably or disproportionately harms neighborhoods in Florida where African-American/Black households are statistically more likely to live.

37. Defendant's policy and/or practice of refusing to accept Housing Choice Vouchers does not have a substantial, legitimate, nondiscriminatory objective. Even if Defendant frames its discriminatory practice as having some business purpose, other, less discriminatory alternatives are and have been available to Defendant to achieve that objective.

38. Defendant's conduct was intentional, willful, and made in reckless disregard of the known rights of others.

39. Plaintiff has been injured by Defendant's discriminatory conduct and has suffered damages as a result. Plaintiff's injuries include, but are not limited to, total deprivation of the $310.00 application fee Plaintiff paid to Defendant, total deprivation of the approximately $30.00 Plaintiff paid to obtain her credit report(s), added monthly expenses to rent temporary housing accommodations while Plaintiff seeks permanent housing accommodations, and severe stress and emotional distress for which Plaintiff has had to visit the hospital twice due to physical symptoms, such as stomach discomfort and migraine headaches.

40. **WHEREFORE**, Plaintiff, respectfully, requests that this Court:

   (a) Declare the actions of Defendant complained of herein to be in violation of the Fair Housing Act;

   (b) Enter a permanent injunction enjoining Defendant, its successors, and its servants, agents, and employees, and all those acting in concert with it, from engaging in discrimination practices, such as the refusal to accept Housing Choice Vouchers;

   (c) Enter a permanent injunction compelling Defendant, its successors, and its servants, agents, and employees, to participate in housing discrimination training;

   (d) Award actual damages to Plaintiff against Defendant as applicable under the Fair Housing Act;

(e) Award Plaintiff their costs and reasonable attorneys' fees in this action;

(f) Enter a judgment in favor of the Plaintiff for the total amount of its damages, plus pre-judgment interest; and

(g) Award Plaintiff any further relief this the Court deems just and proper.

## COUNT II
## VIOLATION OF BROWARD COUNTY, CODE ch. 16½-35

41. Plaintiff re-alleges and incorporates the allegations set forth in paragraphs 1-10, 12, 15-28, and 30 as if fully set forth herein.

42. BROWARD COUNTY, CODE ch. 16½-35 provides, in pertinent part, that: "[i]t is unlawful for any person, including but not limited to any owner, lessee, lessor, sublessee, sublessor, assignee, assignor, manager, real estate broker, salesperson, condominium association, *homeowners' association*, cooperative association, or any representative of any of the foregoing: . . . [t]o refuse to sell or rent after the making of a bona fide offer, to refuse to negotiate for the sale or rental of, or *otherwise to make unavailable or deny, a dwelling to any person because of a discriminatory classification*." BROWARD COUNTY, CODE ch. 16½-35 (emphasis added).

43. BROWARD COUNTY, CODE ch. 16½-3(p) defines "[d]iscriminatory classification" as: "a classification on the basis of race, color, religion, sex, national origin, age, marital status, political affiliation, familial status, disability, sexual orientation, pregnancy, gender identity or expression, veteran or service member status, *lawful source of income*, or because the individual is or has been the victim of dating violence, domestic violence, stalking, or human trafficking." BROWARD COUNTY, CODE ch. 16½-3(p) (emphasis added).

44. Further, BROWARD COUNTY, CODE ch. 16½-3(hh) defines "[l]awful source of income" as "the origin or cause of a legal gain or recurrent benefit, often measured in money or currency, including, but not limited to, income derived from social security, supplemental security

income, child support, alimony, veteran's benefits, disability benefits, unemployment, pension and retirement benefits, an annuity, a gift, an inheritance, the sale or pledge of or interest in property, or any form of federal, state, or local public, food, or housing assistance or subsidy, including assistance from the Supplemental Nutrition Assistance Program (SNAP) and *the Housing Choice Voucher Program or "Section 8" vouchers*, whether such income is received directly or indirectly by the renter or purchaser and even if such income includes additional federal, state, or local requirements." BROWARD COUNTY, CODE ch. 16½-3(hh) (emphasis added).

45. As set forth above, Defendant is a homeowners' association.

46. As set forth above, Plaintiff receives assistance from the Housing Choice Voucher Program.

47. At minimum, upon receiving Plaintiff's application, Defendant had notice of Plaintiff's status as a Housing Choice Voucher holder because the application disclosed this fact.

48. Lacroix, a member of Defendant, explicitly remarked that Plaintiff was a Housing Choice Voucher holder to Murdock.

49. Further, Lacroix, a member of Defendant, remarked that he did not want Housing Choice Voucher holders in the Community. Further, Lacroix explicitly stated that if Murdock could find another potential tenant who was not a Housing Choice Voucher holder, he would have them approved by Defendant within three days.

50. Defendant outright denied Plaintiff from renting the Property.

51. A discriminatory classification (specifically, Plaintiff's status as a Housing Choice Voucher holder), and not a legitimate reason, was the reason why Defendant denied Plaintiff from renting the Property. The statements of Lacroix and the subsequent issuance of the Denial Letter by Defendant less than two weeks later support this conclusion.

52. As such, Defendant discriminated against Plaintiff by denying Plaintiff rental of the Property, of which Plaintiff was otherwise fully qualified for, because of Plaintiff's status as a Housing Choice Voucher holder.

53. Plaintiff has been injured by Defendant's discriminatory conduct and has suffered damages as a result. Plaintiff's injuries include, but are not limited to, total deprivation of the $310.00 application fee Plaintiff paid to Defendant, total deprivation of the approximately $30.00 Plaintiff paid to obtain her credit report(s), added monthly expenses to rent temporary housing accommodations while Plaintiff seeks permanent housing accommodations, and severe stress and emotional distress for which Plaintiff has had to visit the hospital twice due to physical symptoms, such as stomach discomfort and migraine headaches.

54. **WHEREFORE**, Plaintiff, respectfully, requests that this Court:

   (a) Declare the actions of Defendant complained of herein to be in violation of BROWARD COUNTY, CODE ch. 16½-35;

   (b) Enter a permanent injunction enjoining Defendant, its successors, and its servants, agents, and employees, and all those acting in concert with it, from engaging in discrimination practices, such as the refusal to accept Housing Choice Vouchers;

   (c) Enter a permanent injunction compelling Defendant, its successors, and its servants, agents, and employees, to participate in housing discrimination training;

   (d) Award compensatory damages to Plaintiff against Defendant as applicable under BROWARD COUNTY, CODE ch. 16½-35;

   (e) Award Plaintiff their costs and reasonable attorneys' fees in this action;

   (f) Enter a judgment in favor of the Plaintiff for the total amount of its damages, plus pre-judgment interest; and

   (g) Award Plaintiff any further relief this the Court deems just and proper.

Date:  June 25, 2024.

        Respectfully Submitted,

        <u>/s/ Zane C. Hedaya</u>
**JIBRAEL S. HINDI, ESQ.**
Florida Bar No.: 118259
E-mail: jibrael@jibraellaw.com
**ZANE C. HEDAYA, ESQ.**
Florida Bar No.: 1048640
E-mail: zane@jibraellaw.com
**GERALD D. LANE, JR., ESQ.**
Florida Bar No.: 1044677
E-mail: gerald@jibraellaw.com
The Law Offices of Jibrael S. Hindi
110 SE 6th Street, Suite 1744
Fort Lauderdale, Florida 33301
Phone: 954-907-1136

*COUNSEL FOR PLAINTIFF*